## ESTOPPEL AGAINST CHANGED INTERPRETATION OF AGREEMENT.

Common Pleas Court of Hamilton County.

FRANCIS H. CLOUD v. THE MILLIKIN NATIONAL BANK OF DE-
CATUR, ILL., AND HENRY W. HAMANN, SHERIFF OF
HAMILTON COUNTY.

Decided, June 27, 1912.

*Release—Of an Endorser from Liability—Claimed under an Agreement Perhaps Purposely Made Indefinite—Estoppel—Injunction Against Levy of Execution.*

Where one of two parties secures from the other the partial perform-
ance of an indefinite agreement, and in so doing is aware of the
understanding the party performing has as to the conditions em-

bodied in the agreement, the said party is thereafter estopped, at least until the party performing has been placed *in statu quo*, from denying that the agreement should be as understood by him, and upon full performance he is entitled to all the benefits flowing therefrom.

*Waite & Schindel*, for plaintiff.
*Hugh Crea, R. M. Scott* and *Scott Bonham,* contra.

HUNT, J.

This is an action to enjoin the sale of the real estate of the plaintiff in Hamilton county, upon which a levy had been made in favor of the defendants, for the reason that the levy and writ upon which the sale is to be made is irregular and void, and for the further reason that the judgment upon which the execution was issued was obtained in pursuance of an agreement that no execution against the plaintiff was to be issued.

On June 1, 1906, in the Court of Common Pleas of Guernsey County, Ohio, the Millikin National Bank of Decatur, Illinois, commenced an action against J. W. Campbell and F. H. Cloud upon certain promissory notes indorsed by said defendants and a third person named Martin. After sundry motions, demurrers, amendments of petition and answers filed by F. H. Cloud, on June 6, 1908, F. H. Cloud withdrew his answer and J. W. Campbell being in default for answer or demurrer, a judgment was rendered against J. W. Campbell and F. H. Cloud in the sum of $20,307, with interest at five per cent. from May 4, 1908. On July 30, 1908, J. W. Campbell filed a motion to set aside such judgment, and on February 2, 1910, withdrew such motion. On June 23, 1909, execution against F. H. Cloud had been issued to. Hamilton county.. Upon such writ or a similar alias writ a paper levy was made on the F. H. Cloud real estate and return made. Thereafter a writ *vendi exponas,* or writ for the sale of such property, was issued to Hamilton county, but prior to advertising the sale thereunder this action on December 10, 1909, was brought to enjoin such sale.

Plaintiff claims that such judgment was permitted by him to be rendered by reason of an agreement, made with plaintiff in such action, that no execution was to be issued against this

plaintiff upon such judgment, in consideration of the with-
drawal of said answer and the payment of the sum of $4,000.

The facts pertaining to such alleged agreement are substan-
tially as follows:

The plaintiff's liability upon the notes sued upon, if plaintiff
was liable thereon, as between all the parties liable thereon, was
claimed to be as a surety, and if contribution were enforced
he would ultimately have had to pay only one-third, or at most
one-half. Cloud was known to be responsible; Campbell was
supposed to be; Martin was probably not financially responsi-
ble.

The Millikin Bank was represented by its attorney, Mr. Crea,
and also by a local attorney in Cambridge, Guernsey county.
Cloud had an attorney in Cincinnati and also in Guernsey coun-
ty. The case came up for hearing in different forms several
times at Cambridge, and all such attorneys at one or more of
such times were there; also Mr. Cloud himself. Mr. Cloud was
very anxious to make some arrangement by which he could on
easy terms pay one-third and be released from further liability.
The right and methods of so doing, without prejudice to the
bank recovering from others, were discussed and urged upon
the bank's attorneys, but they could not see their way to do so,
even if the bank should consent, which consent was doubtful
under the circumstances. Mr. Crea, the attorney of the bank,
was not adverse to so favoring Mr. Cloud if the bank would con-
sent. Such negotiations were continued while awaiting hear-
ings in court, at hotels, on railroad trains and by letter. Such
negotiations were begun and pushed on the part of Mr. Cloud.
It is not claimed that anything resulted therefrom until after
May 6, 1908, when Mr. Cloud from Cincinnati wrote a letter
directly to Mr. Crea at Decatur, offering $4,000 cash and a note
bearing five per cent., to be paid within such time as would
enable him to dispose of securities. That the $4,000 and the
note were together to amount to one-third of the entire liability,
is not stated in the letter, but may be assumed from previous
negotiation. This letter was taken by Mr. Crea to the bank. A
telegram was sent to Mr. Cloud, and Mr. Crea went to Cincinnati
to see Mr. Cloud. He there had a talk with Mr. Cloud, but the
evidence is not such that any clear agreement is affirmatively

established thereby, although both Mr. Crea and Mr. Cloud thereafter assumed that an understanding had been reached involving the rendering of a judgment against Cloud and Campbell for the entire amount due and the immediate payment by Mr. Cloud of $4,000. Mr. Cloud was eager to infer that, by agreement made, he would be exempted from paying the entire amount of the judgment, and Mr. Crea in order to get the judgment entered, was willing that Mr. Cloud should infer such to be the result. Then followed some correspondence between Mr. Waite, Mr. Cloud's Cincinnati attorney, and Mr. Crea, in which an agreement seems to have been assumed, but such correspondence does not disclose what it was. It shows, however, that Mr. Cloud was still interested in the amount of the judgment to be rendered.

On June 6th, when Mr. Cloud's answer was withdrawn and the judgment entered, there was some talk between Mr. Cloud's attorney and Mr. Crea in which an agreement was again assumed, and the immediate payment of $4,000 by reason thereof expected by Mr. Crea, but the full terms of the agreement were not mentioned nor discussed. Apparently it was not deemed advisable at any time to discuss the full terms of the agreement, for fear that there might be a disagreement if an attempt was made to make it definite, or for fear that such agreement, if known, would interfere with the taking of the judgment against Mr. Campbell. The full terms of the agreement, if any, were therefore apparently left entirely to the custody of Mr. Cloud and Mr. Crea, and each of them permitting its terms to be assumed by the other. Manifestly, however, the bank secured the withdrawal of the answer of Mr. Cloud and the entering of the judgment upon some agreement assumed to exist between Mr. Cloud and Mr. Crea. A few days after the entering of the judgment Mr. Cloud, then in Michigan, forwarded to Mr. Crea a check for $4,000. In his letter of June 14, 1908, with which the check was sent, he refers to a communication just received from Mr. Waite, by reason of which he sent the check, but such communication simply refers to an agreement between Mr. Cloud and Mr. Crea, without giving its terms. Mr. Cloud's letter, although Mr. Cloud is a man of affairs, intelligent and careful, refers to the

condition of the agreement only in vague terms; in fact, the whole case presents a situation where the interested parties assumed an agreement, but purposely avoided putting it in any clear and definite terms and in any permanent form. It is, therefore, natural under the circumstances that the parties thereto now have difficulty in establishing such terms, now that they themselves are interested in establishing contrary conditions. It is not probable that Mr. Cloud would have sent $4,000 without some understanding, at least on his part, that it was to secure the doing or not doing of something to his benefit, nor is it probable that the plaintiff in receiving and retaining such check would suppose that Mr. Cloud would send it simply as a credit upon a judgment of over $20,000, recently rendered against him. Neither the bank nor Mr. Crea, by letter or receipt indicated to Mr. Cloud the terms upon which the $4,000 was received and retained.

Since the rendition of the judgment, Campbell's financial responsibility has become doubtful, and, although the defendant admits that it agreed to do what they could to enforce the judgment against him, it has done nothing further than have an execution issued against him and return made of "no goods," etc.

All parties were either intelligent business men of experience, or experienced lawyers accustomed to putting agreements involving large pecuniary interests, intended to be binding and to control their own and others actions beyond the immediate future, in some written form for their own use if not for legal evidence. It is therefore astonishing in the absence of a formal agreement, if there was any real verbal agreement, that Mr. Cloud should not have mentioned the terms under which his $4,000 check was sent, in the accompanying letter, or that the bank in receiving the check and knowing of Mr. Cloud's anxiety to escape from paying the whole indebtedness, should not have then notified Mr. Cloud of the conditions under which the check was received. That Mr. Cloud expected and that the bank knew that Mr. Cloud expected to secure some advantage along the lines of previous negotiations by the withdrawal of his answer and the entering of the judgment and the payment of $4,000, is manifest.

Having secured the performance, or partial performance by Mr. Cloud of an assumed agreement, although the conditions thereof may have been erroneously inferred by Mr. Cloud, yet such inference of Mr. Cloud being known to the bank when they secured such performance, the bank is now estopped from denying the agreement to be such as it knew Mr. Cloud assumed it to be, at least until Mr. Cloud is put in *statu quo*. This is now probably impossible, because of the delay of the bank in doing "all it could" to enforce payment by Campbell.

If such agreement were entirely executory on both sides the court in the absence of sufficient evidence would simply find that the agreement was not established, but because of its performance or partial performance, there is still an agreement although not established affirmatively and not necessarily the agreement which Mr. Cloud now claims, but which the bank must have known that Mr. Cloud then assumed, which the bank is now estopped from denying. From all the probabilities of the case such agreement is that contained in Mr. Cloud's letter of May 6th, in connection with the prior negotiations as to the paying of one-third. If there was any other agreement more favorable to Mr. Cloud, he has the burden of proof and has failed to establish it. The only agreement which the bank is now estopped from denying contemplates the payment of one-third of the judgment payable, $4,000 cash, and the balance with five per cent. within such time as Mr. Cloud could have disposed of his securities. Such securities are presumed to have been marketable securities and such time may therefore be assumed to have elapsed. Mr. Cloud has made no offer as to the payment of such balance, and until such balance is paid, the defendant should not be enjoined from enforcing their execution. If, however, the payment of such balance is made, then the enforcement of any execution against Mr. Cloud should be enjoined.

If Mr. Cloud should not comply with the conditions of the decree to be entered, in accordance with this opinion, all questions as to irregularities in the levy and the writs issued upon such judgment, can and should properly come before the Court of Common Pleas of Guernsey County, to which returns upon all such writs must be made for confirmation.